UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

ERNEST GREEN,
    a/k/a "Ern,"
RODSHAUN BLACK,
    a/k/a "Rashaun Black" a/k/a "Shaun,"
DANIEL RODRIGUEZ,
    a/k/a "Danny,"

              Defendants.

**DECISION AND ORDER**
12-CR-83S (1)(2)(3)

## I.     INTRODUCTION

On February 8, 2018, this Court dismissed the remaining counts in the superseding indictment with prejudice on constitutional speedy-trial grounds. See United States v. Green, 12-CR-83S (1)(2)(3), 2018 WL 786185 (W.D.N.Y. Feb. 8, 2018). The government moved for reconsideration on February 12, 2018. (Docket No. 784.) By order filed on February 13, 2018, this Court denied reconsideration and indicated that this decision would follow. (Docket No. 787.) Familiarity with this Court's prior decision and the government's arguments for reconsideration is presumed.

## II.     BACKGROUND

On October 31, 2017, Defendants Ernest Green, Rodshaun Black, and Daniel Rodriguez, together with Amilcar Ramos, proceeded to trial on a 9-count superseding indictment. (Docket Nos. 155, 625.) Counts 1 through 5 related to the robbery, extortion, kidnapping, and murder of Jabril Harper ("the Harper counts"). In Counts 1 and 2, Defendants and Ramos were charged with Hobbs Act conspiracy and Hobbs Act

1

robbery and extortion, in violation of 18 U.S.C. §§ 1951 (a) and 2.  In Count 3, Defendants and Ramos were charged with kidnapping, in violation of 18 U.S.C. §§ 1201 (a)(1) and 2.  In Count 4, Defendants were charged with discharge of a firearm causing death, in violation of 18 U.S.C. §§ 924 (j)(1) and 2.  And in Count 5, Defendants and Ramos were charged with the use, brandish, and discharge of a firearm, in violation of 18 U.S.C. §§ 924 (c)(1)(A)(i), (ii), (iii) and 2.

Counts 6 through 9 of the superseding indictment related to the robbery, extortion, and kidnapping of Morris Singer, and charged only Green and Black ("the Singer counts"). In Counts 6 and 7, Green and Black were charged with Hobbs Act conspiracy and Hobbs Act robbery and extortion, in violation of 18 U.S.C. §§ 1951 (a) and 2.   In Count 8, Green and Black were charged with kidnapping, in violation of 18 U.S.C. §§ 1201 (a)(1) and 2. In Count 9, Green and Black were charged with the possession and brandish of a firearm, in violation of 18 U.S.C. §§ 924 (c)(1)(A)(i), (ii) and 2.

On January 17, 2018, after more than 11 weeks of trial, the jury returned a partial verdict under Rule 31(b) of the Federal Rules of Criminal Procedure, after deliberating for seven days.   (Docket Nos. 740, 743.)   It acquitted Green and Black on the Singer counts and acquitted Ramos on all counts against him.   (Id.)   After further deliberations the following day, the jury remained hung on the Harper counts against Green, Black, and Rodriguez.   (Docket No. 741.)   This Court therefore declared a mistrial without objection.   (Id.)

Thereafter, on February 8, 2018, this Court granted Green's motion to dismiss the superseding indictment on constitutional speedy-trial grounds (joined by Black and

2

Rodriguez), which Green had previously filed on the eve of trial. (Docket Nos. 605, 607, 615, 780.) In short, this Court found that Defendants' 68-month pretrial detention was principally chargeable to the government and severely prejudiced Defendants, particularly because they spent their pretrial detention under oppressive conditions and under threat of the death penalty, such that their Sixth Amendment rights to a speedy trial were violated. Green, 2018 WL 786185, at *7-*11. This Court therefore dismissed the indictment with prejudice as required. Id. Four days later, the government moved for reconsideration. (Docket No. 784.)

### III. DISCUSSION

Generally, a district judge may modify pre-trial rulings and interlocutory orders at any time before final judgment. See In re United States, 733 F.2d 10, 13 (2d Cir. 1984). Reconsideration of a prior decision is generally justified in any one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992); see also Shrader v. CSZ Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court"); Amerisure Ins. Co. v. Laserage Tech. Corp., No. 96-CV-6313, 1998 WL 310750, *1 (W.D.N.Y. Feb. 12, 1998) (citing United States v. Adegbite, 877 F.2d 174, 178 (2d Cir. 1989)).

The decision whether to grant or deny a motion to reconsider lies in the court's

discretion.  See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).  Parties bringing motions to reconsider "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Duane v. Spaulding and Rogers Mfg. Inc., No. 92-CV-305, 1994 WL 494651, *1 (N.D.N.Y. Aug. 10, 1994) (quoting McDowell Oil Serv. v. Interstate Fire and Cas., 817 F. Supp. 538, 541 (M.D.Pa. 1993)).  Motions for reconsideration are not to be used as a means to reargue matters already disposed of by prior rulings or to put forward additional arguments that could have been raised before the decision.  See Duane, 1994 WL 494651 at *1.  After all, a "motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge."  Nossek v. Bd. of Ed. of Duanesburg Cent. Sch. Dist., No. 94-CV-219, 1994 WL 688298, *1 (N.D.N.Y. Nov. 10, 1994).

Judged against these well-settled standards, the government wholly fails to state a valid ground for reconsideration: it does not assert an intervening change in controlling law; it does not cite new evidence; it does not allege a need to correct a clear error of law; and it does not meaningfully assert the need to prevent manifest injustice, though that is the stated basis for its motion.  See Motion for Reconsideration, Docket No. 784, p. 5.

Instead, the government's motion is a transparent attempt to obtain a "do over." That is, it seeks to re-litigate Defendants' speedy-trial motion, a classic try for a second bite at the apple.  In doing so, the government complains that it was denied the opportunity to be fully heard on the motion, claiming that "[t]he Court never granted the government permission for a sur-reply" and "[t]he reason Black's counsel's declaration

4

was unrebutted was because it was raised in a reply brief, to which, the Court afforded the government no opportunity to respond." See Motion for Reconsideration, pp. 3, 10, 17. The government also faults this Court for resolving the speedy-trial motion "without the benefit of a pre-trial hearing." See Motion for Reconsideration, p. 3. What the government conveniently ignores, however, is that it neither moved to file a sur-reply nor ever requested a hearing.

The thrust of the government's complaint is that it was denied the opportunity to fully respond to the Defendants' allegations concerning the death-penalty aspect of this case. That is not accurate. The government's handling of the death-penalty proceedings and the possible need for a hearing were both raised in Green's speedy-trial motion and Black's joinder motion. (Docket Nos. 605, 607.) Defendants detailed the government's mishandling of the death-penalty issue and requested a hearing *if* the government sought to challenge their account. (Id.) But the government elected not to do so. Instead, it took the position that its handling of the death-penalty proceedings was "immaterial" to resolution of the motion and that there was no evidence that *the Attorney General's* decision on the death penalty affected the timing of the trial, ignoring that it was not the Attorney General's conduct that was at issue. (Docket No. 690.) This was the government's complete response to the death-penalty issues that Defendants raised.[1]

---

[1] At no time did the government state that it was unable to file a full response to Defendants' speedy-trial motion, i.e., to address Defendants' death-penalty allegations head-on. The government knew that this Court would decide Green's motion after the trial, so it was aware that sufficient time existed for complete briefing. Indeed, this Court granted each of the government's extension requests, culminating in the government filing its response to Green's motion 39 days after it was filed. Thus, rather than a rushed or incomplete response, the government's opposition reflects its complete, considered speedy-trial position, including its strategic election not to counter or rebut Defendants' death-penalty allegations.

After this response, Black's counsel filed the declaration that the government now claims it was denied the opportunity to rebut (Docket No. 697), but that declaration simply expanded on the issues Green initially raised, which the government chose to deem "immaterial" rather than rebut. But even assuming that the government decided to change course to address Defendants' allegations or belatedly request a hearing, it could have sought leave to file a sur-reply under Rule 12(d) of the Local Rules of Criminal Procedure. It did not. Yet it now creates the false impression that it did, claiming that "[t]he Court never granted the government permission for a sur-reply," and complaining that Defendants' motion was resolved "without the benefit of a pre-trial hearing." But the government never sought the opportunities it now claims it was denied. Thus, the record reflects that the government had a full and fair opportunity to raise each of the points it now asserts on reconsideration.[2] This Court is not to blame for its failure to do so.

Nor are Defendants. The government claims that the timing of the speedy-trial motion coupled with the number of trial motions deprived it "of a meaningful opportunity to present a complete record to [the] court regarding the actual course of events which led to the delay in this case."[3] See Motion for Reconsideration, pp. 2, 5. Yet as noted above, the government elected not to "present a complete record," gave no indication that its response was less than complete, and considered the death-penalty issues immaterial.

---

2 Most significantly, the government had every opportunity to rebut Defendants' death-penalty allegations, including the opportunity to present its arguments concerning the timing of Antoine Callahan's plea. See Motion for Reconsideration, pp. 10-13.

3 The government also accuses Defendants of "dilatory tactics" that deprived the court of the "benefit of the full exposition of the history of this case." See Motion for Reconsideration, p. 4.

That the government may now regret this strategic choice is not a valid basis for reconsideration and is certainly not Defendants' fault. Moreover, the government, with its vast resources, is surely well equipped to both respond to motions and conduct a trial, rendering its assertion that it could not do both a nonstarter. See United States v. Wells, 879 F.3d 900, 939 (9th Cir. 2018) (Nguyen, J., concurring) ("The government occupies a powerful role in our justice system, and it has vast resources to accomplish its prosecutorial functions.")

It is well settled that "[a] party may not . . . use a motion for reconsideration to re-argue issues that have already been decided, present 'new theories' or arguments that could have been raised earlier, seek a new hearing 'on the merits, or [to] otherwise tak[e] a second bite at the apple.'" See Groomes v. Frazir, No. 3:17CV1072(JCH), 2018 WL 745954, at * (D. Conn. Feb. 7, 2018)) (citing Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), in turn quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)). Because that is precisely what the government seeks to do here, this Court denied its motion for reconsideration.

But even assuming that the government's motion was proper, this Court would deny it on the merits. The government first maintains that it did not mishandle the death-penalty proceedings nor did the death-penalty decision-making process cause any unnecessary delay. See Motion for Reconsideration, pp. 6-10. This Court has already found to the contrary, and nothing presented by the government changes this Court's conclusions. The fact is that from the outset, the government identified this as a possible, if not likely, death-penalty case. The case then proceeded consistent with that

representation, with the appointment of learned counsel and the delaying of pretrial motions pending a death-penalty decision. While the government may have advocated against delaying pretrial proceedings pending a death-penalty decision, the record is clear that the government's representations that this could become a death-eligible case prompted the magistrate judge to postpone pretrial motions in what was thought to be the interests of economy, thus resulting in delay.[4]

The government next contends that this Court erred by attributing only eight and one-half months of delay to Defendants, when Green's speedy-trial motion calculated 650 days' worth of extensions and adjournments. See Motion for Reconsideration, pp. 13-15. But what Green and the government fail to consider when citing this raw time calculation, assuming its accuracy, is whether the extensions and adjournments themselves caused delay or whether they occurred within a period of time chargeable for speedy-trial purposes to some other reason. See Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) (setting forth balancing test for assessing delay in speedy-trial context).

For example, the magistrate judge determined that initial pretrial motions should be delayed pending the government's death-penalty decision, so Defendants' several

---

4 The government also quibbles with this Court's conclusion that Defendants faced the specter of the death penalty for 1,043 days, arguing that the government never actually pursued a death-eligible offense, and therefore, Defendants never actually faced the death penalty. See Motion for Reconsideration, p. 10; Green, 2018 WL 786185, at *10. This minimizes, if not ignores, the fact that Defendants were informed by the government at the outset of the case, and on many occasions thereafter, that they could potentially face the death penalty. The psychological impact of that possibility is not reduced by the government's observation that it never *definitively* represented that death-eligible charges would come. Indeed, this Court found that the uncertainty in this regard contributed to the prejudice. See id. at *10. The specter of the death penalty thus hung over this case until the government's decision not to pursue it.

extension requests during that time are not fairly chargeable to Defendants. Similarly, Defendants' extension and adjournment requests necessitated by the missing photo array are attributable to the government due to its inability to coordinate its discovery efforts. See Green, 2018 WL 786185, at *8. Still other defense delay occurred within, but did not extend, the new discovery period. Finally, as this Court noted in its speedy-trial decision, some defense delay is properly chargeable to the court for speedy-trial purposes, and consequently the government, because the court did not "more aggressively manage the conduct of counsel." Id. at 8 (citing United States v. Pennick, 10-CR-191A, 2016 WL 4089192, at *8 (W.D.N.Y. Aug. 2, 2016)). Consequently, the parties' raw calculation of Defendants' extension and adjournment requests provides no basis for reconsideration.

Finally, the government takes issue with this Court's mention of the severance motions filed in this case. See Motion for Reconsideration, pp. 15-17. The government criticizes this Court's single observation that "all defendants sought severance at one point or another," as an improper consideration in assessing Defendants' assertion of their speedy-trial rights, because the severance motions were not speedy-trial based. Green, 2018 WL 786185, at *9. A fair reading of the decision, however, reveals that this Court relied on Defendants' numerous expressions of their desire for a speedy trial in finding that they sufficiently asserted their rights, some of which occurred in the context of discussing severance. Id. at *9. This Court then went on to note that all defendants did indeed eventually seek severance, with no finding that the severance motions were speedy-trial based. Id. Consequently, the government's contention that this Court

9

concluded that Defendants were asserting their speedy-trial rights in their severance motions is wrong.[5]  See Motion for Reconsideration, pp. 15-16.

Consequently, even assessed on the merits, this Court found no basis for reconsideration.

## IV. CONCLUSION

Despite the government's claims to the contrary, the hard truth is that it had a full and fair opportunity to litigate Defendants' speedy-trial motion, but failed to include the points it now raises in its opposition. It is not now entitled to a second chance on reconsideration. See Sequa, 156 F.3d at 144. In any event, nothing the government asserts is cause for reconsideration of this Court's previous decision. Consequently, this Court denied the government's motion for reconsideration. (Docket No. 787.)


Date:  February 17, 2018
       Buffalo, NY


                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge

---

[5] The government similarly criticizes this Court for considering that Black is prejudiced by his lengthy pretrial detention due to the loss of the opportunity for any possible federal sentence to run concurrent to the undischarged portion of his state sentence. Green, 2018 WL 786185, at *9. The government acknowledges, however, that this issue would arise if Black was convicted of non-mandatory-sentence charges. See Motion for Reconsideration, p. 18.